Good morning. Good morning. May it please the court. My name is Betsy Stevens and I represent the appellant Cheryl Lewis. What this case boils down to is basically one strong issue which is that at step two of the sequential analysis the ALJ found that Miss Lewis has migraines and that that is a severe impairment. By definition a severe impairment is an impairment that causes a person to have limitations in their ability to perform basic work activities. And because the ALJ at step two found that the migraines were a severe impairment at step four in the RFC finding, the ALJ was required to include limitations stemming from that impairment which he found to be severe. He did not do that. So the vocational expert's testimony that Miss Lewis is capable of performing her past relevant work is based on a hypothetical that did not include all Miss Lewis's limitations. And our next issue is the improper rejection of the opinion of Dr. Nelson who was, excuse me, the consultative examiner who opined that Miss Lewis would be limited in her ability to sit to about four hours a day and that she would be limited in her ability to stand to about three. And the ALJ did not give any reasons whatsoever in his decision for rejecting the opinion of Dr. Nelson. And what that means is that with the impairments described by Dr. Nelson, Miss Lewis, her past relevant work was as an administrative assistant and an administrative secretary. And one of those is a light classification and one is sedentary. But when you can't sit for a total of six hours a day, that reduces your ability to perform most sedentary work. And if you can't stand and move around for more than three hours, for close to six hours a day, then your ability to perform most light work would be impaired. Dr. Simpson was her treating physician for about ten years, right? Yes, Dr. Simpson was. And when you read through his notes, you get the impression, and correct me if this is an that may be related to her disability or it may not, but that you see him grappling to find a definitive physical cause for her problems and reaching out for psychiatric intervention and opinions and that sort of thing. Does that sound about right? Yes, Your Honor. Dr. Lennox, Miss Lewis has been diagnosed with depression and a somatic disorder and a personality disorder. And we also contend that the ALJ erred in not finding those impairments to be severe, even in combination with her other impairments, because a lot of the evidence in the file points to the depression intertwining with things like her migraines and her back pain and her neck disorder and fibromyalgia to the point where the combined effect on her is that she's unable to process work-related stress and make complex decisions and multitask and those sort of activities. Was the VE asked about that? I don't believe that the VE was. To my recollection, the VE was asked whether absences would affect Miss Lewis's ability to perform her past work. But I'm not sure that the ALJ covered the mental impairments at all, especially as far as I'm concerned. Did the ALJ require, in this case, medical source statements from any of the treating physicians? The ALJ did not request statements particularly from the treating psychologists. And under the ALJ's duty to fully and fairly develop the record, the ALJ was required to request those statements. Can you give us a little continuing disability mini-seminar here and tell us what a medical source statement is and why, in general terms, they're important? A medical source statement is a statement from a physician telling us what the claimant is still able to do as far as work-related activities. This relates to RFC? Yes. How? Well, if the medical source statement says the patient can't pay attention and concentrate on work, if the ALJ finds that those impairments are severe, or even if not, even non-severe impairments, that those limitations have to be included in the hypothetical to the VE. And in this case, because the ALJ didn't request medical source statements from the psychological professionals that treated Miss Lewis's depression, the record is missing. I mean, we don't have, we don't know what limitations those doctors would have described for Miss Lewis. Is the medical source statement, it's prepared specifically for this proceeding? Yeah, well, in general, it is, yes. What does it look like? What does the form look like? Well, sometimes it has a list of questions where the doctor writes a narrative response, things like, how many pounds do you think your patient can lift? How long in an eight-hour workday do you think your patient would be able to pay attention? Did you have any doctors that provided medical source statements? Only, I don't believe, I believe that Dr. Nelson, the consultative examiner, he provided some physical limitations. But did he, was he asked to fill out a medical source statement? Was anybody asked to fill out a medical source statement? I don't think that they were, to the best of my recollection. Do you know why they weren't asked? Well, because the ALJ didn't feel that it was necessary. But then, when the decision was issued, it became more apparent that he didn't have enough information about Ms. Lewis's psychological impairments, and those statements would have been helpful in that regard. Okay. I think we understand your argument. You've got a fair amount of time for rebuttal if you choose to use it. Thanks for coming in today. Thank you. We'll hear from the commissioner at this time. Counsel? Mr. Burdett? Good morning. Good morning, Your Honors. David Burdett, appearing on behalf of the Commissioner of Social Security. And just preliminarily, I see that you've got my name. I did file a notice of appearance, substituting myself for my colleague, Ms. Wolf. But if the Court hasn't received that, we'll duplicate that document. The most important thing is that we have it, and the very most important thing is that she has it, and that means, if this is a published opinion, your name will be right there. Okay. Well, hopefully that's good. It may be fame or it may be infamy, but at any rate, a number of things. First of all, we would dispute the characterization of the ALJ's opinion that says that the migraines were found as a severe impairment. That is not quite the case. If you look at the record on about page 23, the ALJ lists out a laundry list of impairments, which includes migraines, fibromyalgia, and says these impairments are severe and provide vocational, and I'm going to use the word provide, but it says and cause vocationally significant limitations. I would respectfully submit to the Court that it is clear from the ALJ's decision that he is not intending to characterize migraines as a severe impairment and impose the duty of further development on himself that counsel is indicating. The impairments are meant to be considered both singly and in combination, as they are in all the Social Security cases, and therefore, he's saying that in combination, these impairments impose vocationally relevant limitations on the claimant. So that's us to that point. But if they're there in combination, then when he puts the hypothetical to the vocational expert, doesn't he have to include all of those limitations in combination? He has to include all the, he has to include all limitations that he finds vocationally relevant. A migraine, it just strikes me, I'm a layman, but a migraine strikes me as a fairly severe limitation on one's ability to function in a workplace. So even though that's being considered in combination with a number of other things, it seems to me that a vocational expert would want to know that somebody suffered from migraines in combination with those other things, rather than just being saying, she suffers from a whole bunch of things, can she work? I take that point. I take that point. And migraines can vary in severity from annoying to pretty darn bad. I think that the ALJ... Pretty darn bad, nearly debilitating. Yes, that's a fact. By itself. But I think that the ALJ reasonably found by looking at the record here, that although she had migraines, and there's no dispute that she has a history of having migraines, that they are not vocationally relevant, that these are not impairments that are going to prevent her from doing work. No, where does the ALJ find that? I'm looking on page 23. Okay, there's... Second paragraph. Medical evidence of record reveals the claimant has the medically determinable impairments of degenerative disc disease, post-surgery, degenerative disc disease of the lumbar spine, migraines, and a history of fibromyalgia. These impairments cause significant vocationally relevant limitations and are considered to be severe. The records also note the claimant has been diagnosed with depression in the recent past. Now, the claimant's argument here is that by saying these impairments cause significant vocationally relevant limitations and are considered to be severe, that that means each of these. And I submit... Her argument is that we don't get to separate them out, we have to include all of them. Right. Okay. Now, I thought that I understood that. But that is a finding that with this whole bunch of things, that she has a severe impairment at step two. So when we get to step four, and we're putting the questions to the vocational expert, doesn't the ALJ have to say, assume the following, and then read this laundry list? The answer is no. The ALJ has to... Granted that she has medically determinable impairments of migraines, degenerative disc disease, a history of fibromyalgia, it is the ALJ's task in all these cases to sort everything else that's in the record, filter that, and come up with a set of vocationally relevant limitations that he believes in. Duties attached, the duty to develop each one attaches if he finds this is severe, this is severe, and this is severe, then further things follow from that. But if he says it in the manner here, my argument is that no, he doesn't have to go through and put to the VE. Because of migraines, he does that. He doesn't believe that. And if you look at the whole context of... Look at page 24, excuse me, I didn't mean to... Go ahead, tell me about page 24. Look at page 24, it's page 406 of the administrative decision and page 24 of our excerpts of record here, and the bottom full paragraph, second sentence picks up, while the claimant has the claimant has worked throughout the period despite her headaches. There is no evidence her headaches have grown more severe or require more treatment than what was done when she was working. Did she testify about the severity of her headaches? Yes, and she disputes that. She claims that... He accept or reject that testimony? He rejected that testimony. On what basis? He finds her less than fully credible because of Dr. Sims, for one thing, who declines to... Although he admits that Dr. Sims doesn't admit, he says that she has headaches, but he declines to find her disabled on really any basis and suggests that she has a psychiatric disability. Is there some objective medical test that rates the severity of migraines? I do not know. Have you ever had one? Yes, I have. Were you able to work? I was not able to work that day, no. I was a kid, but yeah, it was bad. We all are victims or students of our own experience. I've had a couple in my lifetime. I don't have a history of it. They're probably separated by 10 or 12 years, but I'll tell you, when I had a migraine, I could not do anything. The only way that could be communicated to the outside world was to tell people what the severity was. I can't do anything. You need to sit down, lie down, hide, get in a dark room. I don't know how else you can tell the severity of migraine headaches without relying upon what somebody describes them. Is there any evidence in this record that she made up the stuff about the migraines? No, there isn't. There isn't, not to my knowledge. Why would he reject her testimony as to the severity? There is, interestingly, an implication that, for instance, that she claimed a pelvic fracture. This is not directly related to the migraines, but that she claimed a pelvic fracture. That can be objectively determined. Somebody tells you they have a fractured pelvis and they don't? Yeah. You can find that out. Didn't have. If somebody has a migraine and they tell you it's severe, how do you dispute the credibility of that statement? Only by going to other indicia of their credibility. Consider this, Your Honor. I don't mean to be colloquial, but consider this. If the only test were to get up and say, gee, I have a lot of migraines, and if there's no way to dispute that, then everybody could claim that they had disabling migraines. One way to dispute it would be if she had never reported it to a treating physician, and that's not the case here, right? No, she didn't claim that. In fact, virtually every examining and treating physician that she consulted with, she reported that she has a history of migraine headaches, right? That is so. So that's off the table. Right. Counsel, would you turn to the medical source statements for just a minute, and tell me why we shouldn't be concerned that the ALJ declined to request the medical source statements? Well, because the regulation that provides that the ALJ will require medical source statements also says, first of all, that the record will not be deemed incomplete for lack of a medical source statement. That's 404.15.13b6, okay? So now, in the way that we ordinarily construe these things, that to me says you are to request the medical source statement. If a doctor declines to return it, or return it timely, you may proceed with the hearing. But that doesn't mean you may or may not request medical source statements. If you get around to it, fine. If you don't, it's also okay. You can proceed without it. That's not the way that I read your regulation. Can you explain why your regulation means that an ALJ has discretion not to even request it? Well, I can't give it to you any better than that, Your Honor. Now, that may be the case, but I think it is a harmless error. Because if you look at the opinions of the doctors, they don't add up to disability. The big one that they would point to is the allegedly improper rejection of Dr. Nelson. The maximum outcome, the maximum temity for the improper rejection of a physician's opinion is to credit it as true. Well, Dr. Nelson said in one part of his opinion, I think she can only stand or sit for three hours at a time. Your regulation, counsel, says that the ALJ will request. I would take that, that's a very nice thing that they will request, but I would take that as sort of an internal instruction within the agency that the ALJ shall request a medical source statement. Now, the lack of the medical source statement does not make the report incomplete, which means we can't compel doctors to return these things. So if somebody returns one incomplete or they just don't return it at all, then we can go ahead and proceed. We don't have to sit around and wait for them. But it does suggest that there's an obligation. There must be a reason why your regulation suggests that you will request a medical source statement. And can you explain why, in this case, the ALJ didn't do what it looks like the ALJ was supposed to do? I will not defend that, Your Honor. I will not argue that there's no duty to request a medical source statement. The ALJ placed some pretty significant reliance on Dr. Sims' December 2000 opinion that Lewis was not disabled. That is correct. But the opinion contains no description of restrictions on the workday, what she can or cannot do. Wouldn't a medical source statement and an RFC analysis really help in that regard? It probably would, Your Honor. But as you pointed out earlier, Dr. Sims, after 10 years of examining this patient, does not believe that she is disabled. He sends her to Dr. Lennox for psychological evaluation. Well, I have the impression that Dr. Sims is not a regular social security applicant's physician. He's just a normal treating physician that one goes to, irrespective of whether one has the intention or is presently applying for benefits, and that he may not be used to doing this sort of thing. And in the ordinary course of events, there'd be no problem in relying upon his opinion, except for this gap. And that is no medical source statement, no RFC. We really don't know what the underpinnings for his opinion are. Well, I take that point, Judge Hawkins. But my argument to the court is that regardless whether he's a regular social security guy that you go to when you're a social security claimant, and frankly, I would love it if all social security claimants went to just their regular treating physician instead of a social security guy. That's a topic for another day. Right. But setting that aside, the argument that I'd like to submit to the court for your consideration is that procedural requirements notwithstanding, the burden of proof always remains on the claimant to prove their case. They do it by submitting their testimony, yes, but they do it by also submitting medical evidence. No doctor says that this claimant is disabled. A number of doctors say that she's not disabled, not disabled physically, not disabled psychiatrically. And in essence, that is our argument. And I'm not going to embroider on it any further. Let's suppose that we thought that the ALJ erred by not requesting the medical source statements. How would that affect the decision here? It's a harmless error if it does not affect the decision because the ALJ would not have, regardless of medical source statement. But then your record is incomplete. I think it's going to be very difficult for your ALJ to say, well, they wouldn't have told me anything relevant and therefore it's OK. Well, I disagree with that, Your Honor, because if he's already got on the record. OK, let me assume for purposes of moving this along that I thought that it was not a harmless error. Then we lose. I was a mistake and I thought that you had to go back and request the medical source statements. Now, does that require a do over on everything else? Yes, I think it does. So that would cure other claims here about Dr. Rex, Dr. Nelson, the questions to the vocational expert, because all of that would have to be done again. Yes, it would. There'd be a de novo hearing. All the other issues would go away. And if that's the position, then we lose. There's no question about that. We lose and we go back for a remand. Well, maybe you live to fight again, to fight another day. Well, hopefully it does not come back to the Court of the Ninth Circuit because it's disposed of one way or the other at the administrative level. But, yes. Thank you for coming in today. We appreciate your candor. Thank you, Judge. Do you have anything that you're just dying to tell us? You know, ordinarily, the answer to that question is no. Do you have some other answers? No, sir. OK. Thank you. The case just argued will be submitted for decision and will stand in recess for the day. Thank you both.
judges: Nelson, Hawkins, Bybee